CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
PEDRO IGNACIO SUY, *individually and on*
*behalf of others similarly situated,*

|  |  |
|---|---|
| *Plaintiff*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER**<br>**29 U.S.C. § 216(b)** |
| NOREE THAI BAZAAR INC. (D/B/A<br>NOREE THAI BAZAAR), ANDY CHAN<br>LAU and GARY SHUITING CHEUNG<br>A.K.A CHA, | **ECF Case** |
| *Defendants.* | |

-------------------------------------------------------X

Plaintiff Pedro Ignacio Suy ("Plaintiff Suy" or "Mr. Suy"), individually and on behalf of others similarly situated, by and through his attorneys, CSM Legal, P.C., upon his knowledge and belief, and as against Noree Thai Bazaar Inc. (d/b/a Noree Thai Bazaar), ("Defendant Corporation"), Andy Chan Lau and Gary Shuiting Cheung a.k.a Cha, ("Individual Defendants"), (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.     Plaintiff Suy is a former employee of Defendants Noree Thai Bazaar Inc. (d/b/a Noree Thai Bazaar), Andy Chan Lau, and Gary Shuiting Cheung a.k.a Cha.

2.     Defendants own, operate, or control a Thai restaurant and bar, located at 274 Grand Street, New York, New York 10002, under the name "d/b/a Noree Thai Bazaar".

3.      Upon information and belief, individual Defendants Andy Chan Lau and Gary Shuiting Cheung a.k.a Cha, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiff Suy was employed as a cook, food preparer, and delivery worker at the restaurant located at 274 Grand Street, New York, New York 10002.

5.      Plaintiff Suy was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his workday performing non-tipped duties, including but not limited to preparing food and cooking (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiff Suy worked for Defendants in excess of 40 hours per week, without an appropriate minimum wage, overtime, and spread of hours compensation for the hours that he worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiff Suy appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiff Suy the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiff Suy as a delivery worker in their payroll, but in actuality, his duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Suy's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Suy's actual duties in payroll records by designating him as a delivery worker instead of as a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Suy at the minimum wage rate and enabled them to pay him above the tip-credit rate, but below the minimum wage.

12.     Defendants' conduct extended beyond Plaintiff Suy to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Suy and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.     Plaintiff Suy now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.     Plaintiff Suy seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff Suy's state law claims under 28 U.S.C. § 1367(a).

17.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Thai restaurant and bar located in this district. Further, Plaintiff Suy was employed by Defendants in this district.

**PARTIES**

*Plaintiff*

18.     Plaintiff Pedro Ignacio Suy ("Plaintiff Suy" or "Mr. Suy") is an adult individual residing in Queens County, New York.

19.     Plaintiff Suy was employed by Defendants at Noree Thai Bazaar from approximately February 2019 until on or about April 3, 2022.

20.     Plaintiff Suy consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

21.     At all relevant times, Defendants own, operate, or control a Thai restaurant and bar, located at 274 Grand Street, New York, New York 10002, under the name "d/b/a Noree Thai Bazaar".

22.     Upon information and belief, Noree Thai Bazaar Inc. (d/b/a Noree Thai Bazaar) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 274 Grand Street, New York, New York 10002.

23.     Defendant Andy Chan Lau is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Andy Chan Lau is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Andy Chan Lau possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiff Suy, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

24.     Defendant Gary Shuiting Cheung a.k.a Cha is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gary Shuiting Cheung a.k.a Cha is sued individually in his capacity as a manager of Defendant Corporation. Defendant Gary Shuiting Cheung a.k.a Cha possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiff Suy, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

25.     Defendants operate a Thai restaurant and bar located in a neighborhood in Manhattan.

26.     Individual Defendants, Andy Chan Lau and Gary Shuiting Cheung a.k.a Cha, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

27.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

28.     Each Defendant possessed substantial control over Plaintiff Suy's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Suy, and all similarly situated individuals, referred to herein.

29.     Defendants jointly employed Plaintiff Suy (and all similarly situated employees) and are Plaintiff Suy's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

30.     In the alternative, Defendants constitute a single employer of Plaintiff Suy and/or similarly situated individuals.

31.     Upon information and belief, Individual Defendants Andy Chan Lau operates Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

   a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

   b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c)  transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholders,

e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

32. At all relevant times, Defendants were Plaintiff Suy's employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiff Suy, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Suy's services.

33. In each year from 2019 to 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

34. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiff*

35. Plaintiff Suy is a former employee of Defendants who ostensibly was employed as a cook, food preparer, and delivery worker. However, he spent over 20% of each shift performing the non-tipped duties described above.

36.     Plaintiff Suy seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Pedro Ignacio Suy*

37.     Plaintiff Suy was employed by Defendants from approximately February 2019 until on or about April 3, 2022.

38.     Defendants ostensibly employed Plaintiff Suy as a cook, food preparer, and delivery worker.

39.     Although Plaintiff Suy ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

40.     Plaintiff Suy regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

41.     Plaintiff Suy's work duties required neither discretion nor independent judgment.

42.     Throughout his employment with Defendants, Plaintiff Suy regularly worked in excess of 40 hours per week.

43.     From approximately February 2019 until on or about January 2020, Plaintiff Suy worked as a cook and food preparer from approximately 11:30 a.m. until on or about 10:30 p.m., 6 days a week (typically 60 hours per week).

44.     From approximately February 2020 until on or about February 13, 2022, Plaintiff Suy worked as a cook, food preparer, and delivery worker from approximately 11:30 a.m. until on or about 10:30 p.m., Tuesday through Sunday (typically 66 hours per week).

45.     From approximately March 1, 2022 until on or about April 3, 2022, Plaintiff Suy worked as a cook, food preparer, and delivery worker from approximately 2:00 p.m. until on or about 12:00 a.m., Tuesday through Sunday (typically 60 hours per week).

46.     Throughout his employment, Defendants paid Plaintiff Suy his wages by check.

47.     From approximately February 2019 until on or about December 2019, Defendants paid Plaintiff Suy approximately a fixed salary of $700 per week.

48.     From approximately January 2020 until on or about February 14, 2022, Defendants paid Plaintiff Suy approximately a fixed salary of $600 per week.

49.     From approximately March 1, 2022 until on or about April 3, 2022, Defendants paid Plaintiff Suy approximately a fixed salary of $750 per week.

50.     Plaintiff Suy's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

51.     For example, Defendants required Plaintiff Suy to work an additional 1 hour before his scheduled departure time five times throughout employment and did not pay him for the additional time he worked.

52.     From approximately 2020 until 2022, Defendants did not grant Plaintiff Suy any breaks or meal periods of any kind.

53.     Plaintiff Suy was never notified by Defendants that his tips were being included as an offset for wages.

54.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Suy's wages.

55.     Plaintiff Suy was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

56.     On a number of occasions, Defendants required Plaintiff Suy to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

57.     In addition, Defendants frequently required Plaintiff Suy to sign a document in English, the contents of which he was not allowed to review in detail.

58.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Suy regarding overtime and wages under the FLSA and NYLL.

59.     Defendants did not provide Plaintiff Suy an accurate statement of wages, as required by NYLL 195(3).

60.     Upon information and belief, Defendants adjusted Plaintiff Suy's paystubs so that they reflected inaccurate wages and hours worked. For example, Plaintiff's paystubs showed Plaintiff worked for approximately 45 hours per week, when he actually worked approximately 60 hours per week or more.

61.     Defendants did not give any notice to Plaintiff Suy, in English and in Spanish (Plaintiff Suy's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

62.     Defendants required Plaintiff Suy to purchase "tools of the trade" with his own funds—including two bikes.

*Defendants' General Employment Practices*

63.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Suy (and all similarly situated employees) to work in excess of 40 hours a week without paying him appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

64.     Plaintiff Suy was a victim of Defendants' common policy and practices which violate his rights under the FLSA and New York Labor Law by, *inter alia*, not paying him the wages he was owed for the hours he worked.

65.     Defendants' pay practices resulted in Plaintiff Suy not receiving payment for all his hours worked and resulted in Plaintiff Suy's effective rate of pay falling below the required minimum wage rate.

66.     Defendants habitually required Plaintiff Suy to work additional hours beyond his regular shifts but did not provide him with any additional compensation.

67.     Defendants required Plaintiff Suy and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

68.      Plaintiff Suy and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

69.     Plaintiff Suy's duties were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

70.      Plaintiff Suy and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

71.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Suy's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

72.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day on which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

73.     In violation of federal and state law as codified above, Defendants classified Plaintiff Suy and other tipped workers as tipped employees and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

74.     Defendants failed to inform Plaintiff Suy who received tips that Defendants intended to take a deduction against Plaintiff Suy's earned wages for tip income, as required by the NYLL before any deduction may be taken.

75.     Defendants failed to inform Plaintiff Suy who received tips, that his tips were being credited towards the payment of the minimum wage.

76.     Defendants failed to maintain a record of tips earned by Plaintiff Suy who worked as a delivery worker for the tips he received. The defendants' time keeping system did not reflect the actual hours that Plaintiff Suy worked.

77.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

78.     On a number of occasions, Defendants required Plaintiff Suy to sign a document the contents of which he was not allowed to review in detail. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

79.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Suy (and similarly situated individuals) worked, and to avoid paying Plaintiff Suy properly for his full hours worked.

80.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

81.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Suy and other similarly situated former workers.

82.     Defendants failed to provide Plaintiff Suy and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

83.     Defendants failed to provide Plaintiff Suy and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employee's primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

84.     Plaintiff Suy brings his FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b),

on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

85.     At all relevant times, Plaintiff Suy and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

86.     The claims of Plaintiff Suy stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

87.     Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

88.     At all times relevant to this action, Defendants were Plaintiff Suy's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff Suy (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

89.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

90.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

91.     Defendants failed to pay Plaintiff Suy (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

92.     Defendants' failure to pay Plaintiff Suy (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

93.     Plaintiff Suy (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

94.     Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

95.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff Suy (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

96.     Defendants' failure to pay Plaintiff Suy (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

97.     Plaintiff Suy (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

98.      Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

99.     At all times relevant to this action, Defendants were Plaintiff Suy's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff

Suy, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

100.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Suy less than the minimum wage.

101.     Defendants' failure to pay Plaintiff Suy the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

102.     Plaintiff Suy was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

103.      Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

104.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Suy overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

105.     Defendants' failure to pay Plaintiff Suy overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

106.     Plaintiff Suy was damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

107.     Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

108.     Defendants failed to pay Plaintiff Suy one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Suy's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

109.     Defendants' failure to pay Plaintiff Suy an additional hour's pay for each day Plaintiff Suy's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

110.     Plaintiff Suy was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

111.     Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

112.     Defendants failed to provide Plaintiff Suy with a written notice, in English, and in Spanish (Plaintiff Suy's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

113.     Defendants are liable to Plaintiff Suy in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

114.     Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

115.     With each payment of wages, Defendants failed to provide Plaintiff Suy with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

116.     Defendants are liable to Plaintiff Suy in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

117.     Plaintiff Suy repeats and realleges all paragraphs above as though fully set forth herein.

118.     Defendants required Plaintiff Suy to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform his job, further reducing his wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

119.     Plaintiff Suy was damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Suy respectfully requests that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Suy and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Suy and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff Suy's and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiff Suy and the FLSA Class members;

(f)    Awarding Plaintiff Suy and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiff Suy and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime

compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Suy;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Suy;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiff Suy;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff Suy's compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiff Suy;

(m)     Awarding Plaintiff Suy damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiff Suy damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiff Suy liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiff Suy and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiff Suy and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiff Suy demands a trial by jury on all issues triable by a jury.

Dated:  New York, New York

        December 19, 2022

                                        CSM LEGAL, P.C

                            By:      /s/ Catalina Sojo, Esq.
                                        Catalina Sojo [CS-5779517]
                                        60 East 42nd Street, Suite 4510
                                        New York, New York 10165
                                        Telephone: (212) 317-1200
                                        Facsimile: (212) 317-1620
                                        *Attorneys for Plaintiff*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

catalina@csmlegal.com

April 12, 2022

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Pedro  Ignacio  Suy

Legal Representative / Abogado:     CSM Legal, P.C.

Signature / Firma:          *Pedro Ignacio Suy*

Date / Fecha:               12 de Abril 2022

*Certified as a minority-owned business in the State of New York*